UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE WOODCRAFT STUDIOS, INC.,                    No. C-11-3219 EMC

    Debtor.
_____/
                                                             **ORDER AFFIRMING BANKRUPTCY COURT'S DENIAL OF INTERIM FEE APPLICATION AND DISGORGEMENT OF RETAINER**

ALBERT M. KUN, *et al.*,

    Appellant,

    v.

PAUL MANSDORF, *et al.*,

    Appellee.
_____/

    Pending before the Court is Albert Kun's appeal from the Bankruptcy Court's order denying his interim application for attorney's fees and disgorging his $5,000 retainer. Pursuant to Bankruptcy Local Rule 8012-1, the Court finds this matter appropriate for resolution without oral argument. After consideration of the record and the papers submitted by the parties, the Court **AFFIRMS** the Bankruptcy Court's order denying fees and disgorging Mr. Kun's retainer.

                **I.    FACTUAL & PROCEDURAL BACKGROUND**

    Woodcraft Studios, Inc. filed for Chapter 11 protection on December 22, 2010.[1] Docket No. 16-5.[2] On January 13, 2011, Woodcraft applied to the Bankruptcy Court for Appellant Kun's

---

[1] Appellant states in various papers filed with both the Bankruptcy Court and this Court that the bankruptcy petition was filed on December 29, 2010. That is incorrect. According to the petition itself, it was filed on December 22, 2010. *See* Docket No. 16-5.

[2] All Bankruptcy Court documents are attached to Docket No. 16 in this case. The Court refers to any bankruptcy docket numbers as "Docket No. 16-__."

employment as bankruptcy counsel "under a general retainer to represent them as debtors in possession." Docket No. 16-27 (order approving employment); 16-13 (application for employment); 16-14 (affidavit in support of application); 16-15 (amended application for employment). The amended application states that Mr. Kun "has never represented Woodcraft Studios, Inc. before," and that Mr. Kun "represents no interest adverse to debtor as debtor in possession of the estate in the matters upon which he is to be engaged for the debtor in possession, and his employment would be in the best interest of the estate." Docket No. 16-15 ¶¶ 6, 9. In conjunction with that application, Mr. Kun filed an affidavit stating that he "ha[d] no connection to any party interest." Docket No. 16-14 at 1. The affidavit included the attorney-client fee contract, which provided for an hourly fee of $250 and a "non-refundable retainer" in the amount of $5,000. *Id*. at 3. The contract also gave Appellant a lien on any recovery obtained by Woodcraft. *Id.* The contract is dated December 29, 2010, seven days after the filing of the bankruptcy petition. *Id.* at 4. Based on the application and affidavit, the Bankruptcy Court approved Appellant's employment under a "general retainer" without objection. Docket No. 16-27. The order approving employment notes that "[r]eceipt of any compensation is subject to prior court approval after notice of hearing." *Id.*

On May 4, 2011, the Chapter 11 case was converted to Chapter 7. Docket No. 16-58. On May 10, 2011, Appellant Kun filed an interim application for attorney's fees and reimbursement of expenses for $8,250 and expenses of $56.11,[3] over and above the $5,000 retainer. Docket No. 16-51. The application indicated that Mr. Kun had performed $3,950 worth of work as Woodcraft's attorney prior to Woodcraft's filing for bankruptcy, in preparing the case for filing. *Id.* at 4; *see* Docket No. 16-73 at 4. Appellant had not disclosed this work in his affidavit accompanying the application for employment. At the hearing regarding the fee application, Bankruptcy Judge Efremsky found that Appellant had failed to adequately disclose his connections to the debtor as required by 11 U.S.C. § 327 and Bankruptcy Rule 2014. Docket No. 16-73 at 5. Judge Efremsky denied all fees and ordered the disgorgement of the $5,000 retainer. Docket No. 16-64. After Judge

---

[3] Although Mr. Kun does not provide a detailed line-item list for these expenses, his application indicates that the costs incurred were to cover "faxes and telephone calls to Hungary where [the principal of Woodcraft] is currently located." Docket No. 16-51 at 7.

2

Efremsky stated his order, Appellant revealed that he had already spent the retainer and averred that he was unable to return it. Docket No. 16-73 at 12-13. This appeal followed.

## II.  DISCUSSION

### A.  Standard of Review

A bankruptcy court's conclusions of law, including its interpretation of the Bankruptcy Code, are reviewed *de novo*. *In re S. Cal. Sunbelt Developers, Inc.*, 608 F.3d 456, 461 (9th Cir. 2010). A bankruptcy court's findings of fact are reviewed for clear error. *Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 705 (9th Cir. 2004). A factual finding is clearly erroneous if, after reviewing the record, the appellate court has a definite conviction an error has been made. *In re Beauchamp*, 236 B.R. 727, 729-730 (9th Cir. BAP 1999). A bankruptcy court's determination of attorneys' fees will not be disturbed on review "unless the bankruptcy court abused its discretion or erroneously applied the law." *In re Strand*, 375 F.3d 854, 856-57 (9th Cir. 2004); *see also Sunbelt Developers*, 608 F.3d at 461; *In re PFG Const., Inc.*, 2010 WL 6259962, at *3 (9th Cir. BAP 2010) ("An order directing counsel to disgorge fees is reviewed for abuse of discretion.").

### B.  Denial of Fees and Disgorgement

The Bankruptcy Court denied Mr. Kun's requested fees and ordered disgorgement of his retainer because he had failed to disclose to the Court that he was a pre-petition creditor of the estate. The Bankruptcy Court summarized the problem as follows:

> If you represent somebody before the filing, either you have a retainer, which apparently you obtained some sort of a retainer, $5,000, what attorneys do is they draw down on those fees that were incurred pre-petition, advise the Court that from, say, a $5,000 retainer, I provided services of $3,950. I've deducted that, and I have a remaining retainer of $1,050. You didn't do that here, so you were not disinterested. You had fees that were owed pre-petition. You didn't draw down on the retainer; you didn't waive those fees; and you didn't even bring it to the Court's attention. There's a total failure of candor to the tribunal. You know, on that basis alone, I can deny your fee application in total.

Docket No. 16-73 at 5. The Bankruptcy Court denied his fee application and disgorged his $5,000 retainer on the ground that he failed to disclose his status as a pre-petition creditor and, more generally, for his lack of "candor to the tribunal." *Id.* at 10-11. The Bankruptcy Court further noted that Mr. Kun had failed to provide services that benefitted the estate, as the Court "d[id]n't think

3

[he] really understood what was going on in this Chapter 11 case," and commented that he "clearly d[id]n't understand what the law is." *Id.* Upon learning that Mr. Kun had spent the $5,000 retainer, the Bankruptcy Court stated, "If you received a $5,000 retainer from the Debtor, pre-petition, you had no authority to use that retainer. . . . [Y]ou had no authority to use that money because you didn't draw down on it. I never approved the fees." *Id.* at 12. On appeal, Appellant argues that the Bankruptcy Court erred in denying his fees and that the Court lacked authority to disgorge his retainer.

1. <u>Waiver</u>

As a preliminary matter, Appellee U.S. Trustee argues that Appellant has waived four of his arguments on appeal: (1) that he had a security interest in the retainer; (2) that the retainer was non-refundable under state law; (3) that the law does not provide for return of the retainer; and (4) that the court can only order the retainer to be returned to the extent it is determined to be excessive. U.S. Trustee Brief at 15. U.S. Trustee argues that Appellant failed to present these arguments to the Bankruptcy Court.

As Appellant's fee application and comments at the fee hearing indicate, it is unclear whether Appellant appreciated the fact that disgorgement of his retainer was a possibility. *See* Docket No. 16-51 at 5 (deducting retainer from total fee request as if that amount had already been paid). However, disgorgement was nonetheless squarely presented by the Trustees' oppositions to his fee application. *See* Docket No. 16-59 at 4 (Trustee Mansdorf's opposition, requesting at least partial disgorgement); 16-61 at 5 (U.S. Trustee's opposition, requesting that "any retainer be disgorged"). It is apparent from the record that Mr. Kun failed to respond to the these requests and failed to raise the above arguments in the Bankruptcy Court. *See* Docket No. 16-51 (fee application); 16-60 (reply brief)[4]; 16-73 (transcript of fee hearing). Accordingly, he has waived

---

[4] Mr. Kun's reply brief raises only the following arguments: (1) Notice was proper; (2) Mr. Kun is not a creditor; (3) Trustee has no standing to object; (4) Trustee has a conflict of interest; (5) Trustee uses the wrong standard for small fee applications (regarding the level of detail necessary in describing the services rendered); (6) Mr. Kun should be allowed to amend any services inadequately described; and (7) Trustee's objections are based on improper grounds (*i.e.*, the Chapter under which debtor filed for bankruptcy is irrelevant to the fee award, and the proper basis for evaluation is the reasonableness of the fee request).

4

them. *See In re Van Upp*, No. C 11-00178 SI, 2011 WL 4949044, at *10 (N.D. Cal. Aug. 30, 2011) ("Because debtor failed to raise this argument in the Bankruptcy Court, it is waived on appeal."). Even if not waived, his arguments are without merit for the reasons set forth below.

### 2. Attorney's Fees & Disclosure Rules

Mr. Kun's employment as an attorney for the debtor in possession in a Chapter 11 case is governed by § 327(a) of the Bankruptcy Code,[5] which requires court approval for the attorney's employment. The bankruptcy court is charged with "ensur[ing] that attorneys who represent the debtor do so in the best interests of the bankruptcy estate." *In re Park-Helena Corp.*, 63 F.3d 877, 880 (9th Cir. 1995). Under § 327, an attorney for a debtor cannot "hold or represent an interest adverse to the estate"; he or she must be a "disinterested person." 11 U.S.C. § 327(a). Any creditor of the estate, or anyone with "an interest materially adverse to the interest of the estate . . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor," is not a disinterested person. 11 U.S.C. §§ 101(14)(A), (C). A "creditor" includes any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor," § 101(10)(A),[6] and a "claim" includes any "right to payment," § 101(5)(A).

To enable the Bankruptcy Court to evaluate an attorney's potential employment, Rule 2014(a) requires that an application for employment of an attorney under § 327 "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. P. 2014(a). This disclosure requirement is applied "strictly." *Park-Helena*, 63 F.3d at 881.

An attorney approved for employment under § 327 must apply for interim or final compensation, which is subject to approval of the Bankruptcy Court. 11 U.S.C. §§ 328-31; *see also*

---

[5] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[6] Commencement of a voluntary bankruptcy case "constitutes an order for relief." 11 U.S.C. § 301(b).

*In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 575 (Bankr. N.D. Tex.1986) (noting that "fees in bankruptcy cases . . . are subject to review, modification, and outright cancellation by the Court"). Rule 2016(a) requires an attorney seeking compensation and/or reimbursement of expenses to file an application "setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." The fee application must also include, *inter alia*, "a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, [and] the source of the compensation so paid or promised." *Id.* After notice and a hearing, the court may award "reasonable compensation for actual, necessary services rendered," as well as "reimbursement for actual, necessary expenses." § 330(a)(1).

Separate from and in addition to a fee application, § 329(a) further requires a debtor's attorney to "file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." Rule 2016(b) requires the attorney to file such a statement "within 14 days after [a petition is filed]," along with supplemental statements "within 14 days after any payment or agreement not previously disclosed." The court may approve any reasonable compensation agreement, including on a retainer and/or hourly basis. § 328(a). However, once an attorney has disclosed his or her "compensation paid or agreed to be paid," the court may "cancel any such agreement, or order the return of any such payment" if the court determines that it "exceeds the reasonable value of any such services." § 329(b). The court may also "deny allowance of compensation for services and reimbursement of expenses . . . if, at any time . . . , such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." § 328(c).

Pursuant to the disclosure rules of §§ 327 and 329 and Rules 2014 and 2016, the attorney has the duty to disclose all relevant information to the court, and may not exercise any discretion to withhold information. *See Park-Helena*, 63 F.3d at 880, 882; *In re Coastal Equities, Inc.*, 39 B.R.

304, 308 (Bankr. S.D. Cal. 1984) ("It is the duty of the attorney to reveal all connections.") (citing *In re Haldeman Pipe & Supply Co.*, 417 F.2d 1302, 1304 (9th Cir.1969); *In re Arlan's Dept. Stores, Inc.*, 615 F.2d 925, 932 (2d Cir.1979)); *In re Plaza Hotel Corp.*, 111 B.R. 882, 883 (Bankr. E.D. Cal. 1990) ("The duty is one of complete disclosure of all facts."), *aff'd*, 123 B.R. 466 (9th Cir. BAP 1990). "The purpose of such disclosure is to permit the Court and parties in interest to determine whether the connection disqualifies the applicant from the employment sought, or whether further inquiry should be made before deciding whether to approve the employment. This decision should not be left to counsel, whose judgment may be clouded by the benefits of the potential employment." *In re Lee*, 94 B.R. 172, 176 (Bankr. C.D. Cal.1988).

Applying the disclosure rules to a request for fees, "[i]f [] an attorney holds an undisclosed adverse interest, the court is empowered to deny all compensation and reimbursement of expenses." *Coastal Equities*, 39 B.R. at 308 (citation omitted); *Park-Helena*, 63 F.3d at 881 (denying all fees where attorneys had failed to comply with disclosure requirement of 11 U.S.C. § 329 to disclose the source of a retainer). More broadly, "failure to comply with the disclosure rules is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." *Park-Helena*, 63 F.3d at 880 (citing *In re Film Ventures Int'l, Inc.*, 75 B.R. 250, 252 (9th Cir. BAP 1987)); *see also In re Downs*, 103 F.3d 472, 479 (6th Cir.1996) ("The bankruptcy court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016. The authority to do so is inherent, and in the face of such infractions should be wielded forcefully."); *In re Arlan's Department Stores, Inc.*, 615 F.2d 925, 933-34 (2d Cir. 1979) (disclosure violations in employment application constitute a breach of fiduciary duty to the Bankruptcy Court).

Accordingly, the duty to disclose extends to "[a]ll facts that *may be pertinent* to a court's determination of whether an attorney is disinterested or holds an adverse interest to the estate," regardless of whether the attorney thinks the information is sufficient to render him adversely interested. *Park-Helena*, 63 F.3d at 882 (emphasis added) (quotations omitted). In addition, "[n]egligent or inadvertent omissions do not vitiate the failure to disclose," and such a failure "may

1 result in a denial of all requested fees." *Park-Helena*, 63 F.3d at 881, 882 (citations and quotations omitted); *see also Halbert v. Yousif*, 225 B.R. 336, 346 (E.D. Mich. 1998) (good faith is irrelevant to whether disclosure violation has occurred). Indeed, "[a]bsent the spontaneous, timely, and complete disclosure required by § 327(a) and Rule 2014, court-approved counsel proceed at their own risk." *In re Cook*, 223 B.R. 782, 794 (10th Cir. BAP 1998) (citing *Rome v. Braunstein*, 19 F.3d 54, 59 (1st Cir. 1994)).

### 3. Appellant's Disclosure Violations

In the instant case, Appellant Kun's failure to inform the Bankruptcy Court of his pre-petition relationship with the debtor and the full circumstances surrounding his receipt and use of the $5,000 retainer provided the Bankruptcy Court discretion to deny all of his fees, including his $5,000 retainer. Appellant's disclosure violations were substantial. Although his employment application included debtor's agreement to pay him a $5,000 retainer, Appellant failed to disclose any pre-petition work that he had done for debtor and the fact that he had already incurred fees. Such information was relevant to the court's determination of whether Mr. Kun was disinterested under § 327, and was required by Rule 2014(a). In addition, Mr. Kun failed to file a disclosure under § 329 and Rule 2016 describing the compensation he had received or debtor had agreed to pay him within one year prior to filing the petition, what services had been rendered, and the source of any compensation. Such disclosures were required within 14 days of filing the bankruptcy petition on December 22, 2010 (and supplemental disclosures were required 14 days after any additional payment was received). *See* Rule 2016(b). Yet Mr. Kun made no description of any services rendered until his fee application in May 2011, and he did not reveal that he had used the retainer until the hearing itself. Nor did he ever disclose when he had received the retainer.[7]

---

[7] It is unclear when Mr. Kun actually received the retainer. Mr. Kun states that it was a pre-petition retainer, and Woodcraft's financial filings with the Bankruptcy Court indicate that $1,050 was paid in professional services post-filing, which would match the $3,950 in fees Mr. Kun claims he incurred pre-petition to reach a total of $5,000. *See* Docket No. 16-33 at 3 (monthly operating report of March 2011). Yet, the contract submitted to the Bankruptcy Court in conjunction with the application for Mr. Kun's employment suggests the retainer had not yet been paid when the petition was filed, because the contract was not signed until a week after the petition was filed. *See* Docket No. 16-14 at 3 (signed December 29, 2010, stating, "Client shall tender the sum of $5,000"). In addition, as the U.S. Trustee noted in briefing in the court below, the fact that Mr. Kun's fee application includes costs incurred pre-filing indicates that the retainer was not paid or drawn down

Based on these disclosure violations, the Bankruptcy Court was well within its discretion to deny all fees to Mr. Kun and order disgorgement of his retainer. Such orders have been affirmed in similar circumstances. *See Park-Helena*, 63 F.3d at 881 (denying all fees where attorneys had failed to comply with disclosure requirement of § 329 to disclose the accurate source of a retainer, even though the retainer itself was disclosed); *In re Lewis*, 113 F.3d 1040, 1044, 1045 (9th Cir. 1997) (denial of fees and disgorgement of retainer warranted where attorney had misrepresented timing of retainer and failed to file timely supplemental disclosure under Rule 2016(b)); *In re Maui*, 133 B.R. 657, 660-61 (Bankr. D. Haw. 1991) (denial of all fees and disgorgement of pre-petition retainer warranted where attorney failed to disclose all fees received and prior work done for debtor, even when prior work was unrelated to current matter). *See also In re Kisseberth*, 273 F.3d 714, 720-21 (6th Cir. 2001) (finding that "a compensation statement that disclosed the $1,500 retainer that [the attorney] had been paid, but not the $5,420 in prepetition legal fees that he had billed . . . violated § 329 because it was incomplete" and that "the bankruptcy court did not abuse its discretion in heavily sanctioning [the attorney] for these violations"); *In re Independent Engineering Co., Inc.*, 197 F.3d 13, 16 (1st Cir. 1999) (denial of fees and disgorgement were warranted where attorney "not only drew on a pre-petition retainer but also failed to disclose that fact in his amended motion for employment or in any accompanying statements to the bankruptcy court"); *In re Cook*, 223 B.R. 782, 794 (10th Cir. BAP 1998) (total disgorgement of fees warranted where attorney failed to

---

pre-filing. *See* Docket No. 16-61 at 5.

Regardless of which scenario is correct, Mr. Kun failed to adequately disclose the facts related to his representation of, and compensation from, debtor. If the retainer was pre-petition, as Mr. Kun avers, then Mr. Kun was required to disclose any amount drawn down from that retainer and provide a description of any services rendered for which he had already been paid. *See* § 329(a); Rule 2016(b); *see also In re Plaza Hotel Corp.*, 111 B.R. 882, 884 n.4 (Bankr. E.D. Cal. 1990) ("An attorney is free to take a retainer prepetition and has a cognizable interest – it serves as security for payment of eventual fee awards – in the retainer fund, even though *the fund must be disclosed and is ordinarily property of the estate which the attorney cannot use without permission from the court*.") (emphasis added) (citing *In re C & P Auto Transport, Inc.*, 94 B.R. 682, 682 (Bankr. E.D. Cal. 1988)). If the retainer was post-petition, then it was subject to additional restrictions, as "[a]n attorney is not free to receive a postpetition retainer payment from property of the estate without prior permission from the court after parties in interest (normally other claimants of administrative expenses) have had an opportunity to object." *In re Plaza Hotel Corp.*, 111 B.R. at 884 n.4. In addition, Mr. Kun was required to disclose that he had already rendered services for which he had not yet been paid, which would likely render him a pre-petition creditor and disqualify him from appointment as an attorney under § 327. *See* Rule 2014(a).

9

disclose pre-petition contingent fee arrangement); *Halbert v. Yousif*, 225 B.R. 336, 357 (E.D. Mich. 1998) (denial of all fees and disgorgement of retainer justified by failure to disclose transfers of merchandise received before bankruptcy filing); *In re Woodward*, 229 B.R. 468, 473-74 (Bankr. N.D. Okla. 1999) (denial of all fees warranted where attorney failed to disclose full extent of fees received, even if some fees were ultimately transferred to another attorney).

Appellant's arguments against the Bankruptcy Court's order lack merit. For example, contrary to Appellant's contention, a finding of excessiveness under § 329 is not a necessary predicate to disgorgement or denial of fees. *See Lewis*, 113 F.3d at 1044-45 ("An attorney's failure to obey the disclosure and reporting requirements of the Bankruptcy Code and Rules gives the bankruptcy court the discretion to order disgorgement of attorney's fees."). The *Lewis* court rejected this precise argument. *Id.* at 1045-46 ("[W]e have little difficulty in rejecting Franke's argument that the bankruptcy court's disgorgement order must be reversed because the court made no findings of excessiveness under § 329(b)."). Rather, disgorgement was within the court's discretion especially where, as here, the court found that there was "a total failure of candor to the tribunal." *See* Docket No. 16-73 at 5; *Lewis*, 113 F.3d at 1046 (finding no abuse of discretion in disgorging fees where decision was based on "conclu[sion] as a factual matter that [attorney] acted with 'complete disregard' for the procedures and requirements of the Bankruptcy Rules and the Bankruptcy Code"). It is the lack of candor, not the quantum of fees, that is at issue here.

Mr. Kun's next argument, that he was not actually a creditor of the estate or otherwise adversely interested, is inapposite. As the Ninth Circuit has made clear, "failure to comply with the disclosure rules is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." *Park-Helena*, 63 F.3d at 880. Accordingly, the disclosure violations themselves are independent grounds for denying Mr. Kun's fees, regardless of whether the undisclosed information would have materially affected the Bankruptcy Judge's decision to approve of his employment.

Appellant next argues that the Bankruptcy Court had no authority to disgorge his $5,000 retainer. Appellant claims the Bankruptcy Court lacked this authority because he received a pre-petition retainer, which is not property of the estate, and in which he has a valid security interest

under state law. Docket No. 16-14 at 3 (attorney-client agreement providing for a "non-refundable" retainer). As a factual matter, it is unclear from the record exactly when Mr. Kun received the retainer[8] and what type of retainer it was.[9] However, for purposes of the Bankruptcy Court's ruling

---

[8] There is a dispute as to when Mr. Kun received the retainer. Although Appellant claims he received the retainer pre-petition, his retainer agreement was not signed until one week after the bankruptcy petition was filed. Under § 541 of the Bankruptcy Code, the filing of a bankruptcy petition creates a bankruptcy estate consisting of all the debtor's property, and § 362(a)(4) provides that filing the petition stays all liens against any estate property. Thus, to the extent Appellant actually received the retainer post-petition, it would be part of the estate. *See In re Plaza Hotel Corp.*, 111 B.R. at 884 n.4 ("[A] postpetition retainer is subject to more stringent requirements. An attorney is not free to receive a postpetition retainer payment from property of the estate without prior permission from the court after parties in interest (normally other claimants of administrative expenses) have had an opportunity to object. Postpetition transfers that are either not authorized by specific provisions in the Bankruptcy Code, or not approved by the court, can be avoided under 11 U.S.C. § 549 and recovered under 11 U.S.C. §§ 542, 543, or 550."). To the extent that the retainer was pre-petition, it may or may not be considered part of the estate depending on its type, as discussed below.

[9] "In general, three types of retainers exist: (1) classic or true retainers, (2) security retainers, and (3) advance payment retainers." *In re Dick Cepek, Inc.*, 339 B.R. 730, 736 (9th Cir. BAP 2006) (citing *In re Montgomery Drilling Co.*, 121 B.R. 32, 37 (Bankr. E.D. Cal. 1990); *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 997-1002 (Bankr. N.D. Ill. 1990)). As the Ninth Circuit Bankruptcy Appellate Panel has explained:

> Classic retainers refer to the payment of a sum of money to secure availability over a period of time. The attorney is entitled to the retainer whether or not services are needed. The advance payment retainer occurs when a client pre-pays for expected services; ownership of the funds in the retainer is intended to pass to the attorney at the time of payment, although California law is unclear whether ownership does indeed pass at that time.
>
> A security retainer is generally held as security for payment of fees for future services to be rendered by the attorney. The retainer remains property of the client (in this case, the estate) until the attorney applies it to charges for services actually rendered. Any unearned funds are returned to the client. . . . .
>
> A security retainer is per se property of the estate, even when paid pre-petition (to the extent it has not been drawn down), and cannot be used absent a court order approving fees.

*Id.* at 736 n.5 (internal citations and quotation marks omitted). Different courts may use different names for these retainers. For example, a classic retainer is also frequently referred to as an "earned on receipt" retainer. *See* 3 Collier on Bankruptcy ¶ 328.02[3][a] (16th ed. 2011). In addition, there is some dispute among courts as to whether an advance payment, non-refundable retainer is enforceable in bankruptcy. *Compare, e.g., C & P Auto Transport*, 94 B.R. at 687 (non-refundable retainers are "unenforceable in bankruptcy"), with *In re Heritage Mall Assoc.*, 184 B.R. 128, 133-34 (Bankr. D. Or. 1995) (holding that the Bankruptcy Code does not *per se* preclude non-refundable, or earned-on-receipt, retainers, though they are still subject to the court's review for reasonableness). It is also unsettled whether California law recognizes a distinction between advance payment and security retainers. *See, e.g., In re Radulovic*, Nos. WW-05-1142-SDK, 04-24771, 2006 WL

in the case at bar, these uncertainties are immaterial because no retainer – whether pre-petition or post-petition, and whether classic, security, or advance payment – would be immune from Bankruptcy Court review for two reasons.

First, *all* retainer agreements – and fee arrangements in general – are subject to the Bankruptcy Court's approval and modification, regardless of how those arrangements are treated under state law. "The court's approval is required whether or not the terms and conditions [of employment] (e.g., a retainer) are permissible under state law." 3 Collier on Bankruptcy ¶ 328.02. Even if a pre-petition earned on receipt retainer (where ownership of funds is intended to pass to the attorney on payment) is permissible under state law, section 328(a) mandates that the court review the reasonableness of any fee arrangement between a debtor and its attorney. *In re Dividend Dev. Corp.*, 145 B.R. 651 (Bankr. C.D. Cal. 1992). *See generally Brown v. Gerdes*, 321 U.S. 178, 182 (1944) (The Bankruptcy Act "provided a centralized control over all administration expenses, of which lawyers' fees are a part."); *In re Anderson*, 936 F.2d 199, 204 (5th Cir. 1991) ("It is well established law that, absent compliance with the Bankruptcy Code and Rules, an attorney has no absolute right to an award of compensation.").

In the instant case, it is undisputed that Judge Efremsky did not approve a retainer arrangement by which Mr. Kun could use the retainer funds without additional court authorization. To the contrary, the Bankruptcy Court's order explicitly required Mr. Kun to seek "prior court

---

6810999, at *5 n.5 (9th Cir. BAP Aug. 18, 2006 (noting that "the Ninth Circuit has yet to recognize the[] distinction" between security and advance payment retainers) (citing *SEC v. Interlink Data Network of Los Angeles, Inc.*, 77 F.3d 1201, 1205 n. 4 (9th Cir. 1996)); *In re GOCO Realty Fund*, 151 B.R. 241, 251 (Bkrtcy. N.D. Cal.1993) ("Applying California law, there may be no difference in treatment of a security retainer and an advance payment retainer."); *Baranowski v. State Bar*, 24 Cal.3d 153, 154 (1979) (distinguishing between classic retainers, which are earned on receipt, and advance fee payments, which are not).

In the instant case, it is also not clear exactly what kind of retainer Appellant claims he has. For example, Appellant states in one section of his brief that, like the attorney in *Dick Cepek*, he too holds a "security interest in the retainer." Opening Brf. at 5. Yet elsewhere in his brief, Appellant states that the retainer was not property of the estate and that it was a "non-refundable," "classic retainer." *Id.* at 6 (citing *In re Bigelow*, 271 B.R. at 187). Yet as discussed above, a classic retainer is not the same as a security retainer.

For purposes of this review, this Court need not resolve these questions.

approval after notice of hearing" before receiving "any compensation." Docket No. 16-27 at 2.[10] Such an order was well within the Bankruptcy Court's power. *See* 3 Collier on Bankruptcy ¶ 328.02 ("A court may approve employment of a professional either on terms and conditions requested or *any terms and conditions that the court finds necessary* to satisfy the requirement of reasonableness in section 328(a).") (emphasis added); *In re Hathaway Ranch Partnership*, 116 B.R. 208, 217-19 (Bankr. C.D. Cal.1990) (advance fee payments deemed earned on receipt are still subject to bankruptcy court approval, and court can construe an agreement differently than the language of the agreement might suggest); *Plaza Hotel Corp.*, 111 B.R. at 884 n.4 (pre-petition security retainer is still subject to court approval before attorney actually uses funds) (citations omitted).

Second, *all* retainers, regardless of type and when they are received, are subject to disgorgement in response to disclosure violations. *See Park-Helena*, 63 F.3d at 881 (denying all compensation where attorneys had failed to comply with disclosure requirement of § 329 to disclose the accurate source of a pre-petition retainer, even though the retainer itself was disclosed); *In re Tan, Lie Hung & Mountain States Investments*, LLC, 413 B.R. 851, 857 (Bankr. D. Or. 2009) (disgorgement of earned-on-receipt retainer was warranted due to disclosure violations even though the retainer funds were not estate property) (citations omitted). A bankruptcy court's authority to deny or disgorge any and all compensation is "grounded in [its] inherent authority over the debtor's attorney's compensation." *Lewis*, 113 F.3d at 1045). Thus, regardless of the type of retainer Mr. Kun held or when he received it, the Bankruptcy Court was within its authority to disgorge it.

---

[10] It is true that the Bankruptcy Court's order approving Mr. Kun's employment stated that Mr. Kun was approved under a "general retainer." However, a general retainer does not give an attorney authority to use retainer funds without court approval. Docket No. 16-27 at 1-2. As *C & P Auto Transport* explained,

> When a bankruptcy court approves employment under a "general retainer," it is using that term in the sense that the professional will provide services when requested or required, will provide no services that are not requested or required, will not accept a conflicting representation, and *will be paid separately for actual, necessary services rendered at lodestar rates pursuant to sections 330 and 331*. Any variations in that meaning must be evident on the face of the order.

94 B.R. at 687 (emphasis added). Here, there are no variations in that meaning, as the Court specified that any compensation must be separately approved by the Court.

Appellant mistakenly relies on inapposite cases to support his argument that pre-petition security retainers are not subject to disgorgement. For example, in *Dick Cepek*, the Bankruptcy Appellate Panel merely held that where an attorney holds a pre-petition security retainer that is valid, "properly documented, disclosed, and approved by the bankruptcy court," that retainer is not subject to disgorgement *solely* "in the interest of equal treatment under section 726(b)." 339 B.R. at 732. Section 726(b) is not at issue in the case at bar, and the Bankruptcy Court found that Appellant's retainer was not properly documented or disclosed. Nor did the Bankruptcy Court approve Appellant's purported security retainer, as its order approving his employment specified that any and all compensation was subject to prior court approval. Moreover, *Dick Cepek* explicitly held, "Of course, the court may, in the exercise of its discretion, order disgorgement or turnover for other reasons, including (but not limited to) instances when a professional has not provided services commensurate with the retainer or has not properly disclosed the secured interest in the retainer." *Id.* at 737 n.8 (citing *Park-Helena*, 63 F.3d at 881-82). Similarly, in *In re the Mobile Team*, 447 B.R. 512 (Bankr. E.D. Va. 2011), the Bankruptcy Court had approved not only the security retainer, but also the requested fees that were potentially subject to later disgorgement. *Id.* at 513. In addition, *Mobile Team* again concerns only disgorgement under 726(b), which has no application to the instant case. These cases therefore do not diminish the authority cited above that disgorgement is warranted in response to disclosure violations.

Other authority on which Appellant relies to suggest that state law should control over bankruptcy law is even further afield. For example, *Travelers Casualty* addresses the claims of *creditors* to the bankruptcy estate, not debtors' attorneys in the bankruptcy matter itself. *Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443 (2007). The court noted that "state law governs the substance of *claims*," referring to claims of creditors to the estate. *Id.* at 450 ("Travelers' claim for attorney's fees has nothing to do with property tax, child support or alimony, services provided by an attorney of the debtor."). Appellant appears to confuse the law regarding creditors' claims with those regarding attorneys' compensation for representation in bankruptcy. *In re Bigelow* is similarly inapposite, as it addresses whether certain retainers (paid in a collateral matter) were dischargeable under § 523 and whether issue preclusion applied from a default

14

1  judgment under state law. It does not address professional fees under § 330 or the issue of
2  disgorgement at all. *See* 271 B.R. 178 (9th Cir. BAP 2001).

3  Accordingly, Appellant's argument that his retainer is immune from disgorgement based on
4  state-law interpretations of his contract fails.

5  Mr. Kun's due process argument is likewise without merit. Appellant claims that the
6  Bankruptcy Court violated his substantive due process rights[11] because it was without authority to
7  disgorge his retainer. Yet, as discussed above, Mr. Kun had no right to use the retainer funds absent
8  a court order. Accordingly, the Bankruptcy Court had ample authority to deny his fees and disgorge
9  his retainer. Similarly, whether he was required to keep the retainer in a trust account is immaterial;
10 pursuant to the Bankruptcy Code and Rules and was explained in the order approving Mr. Kun's
11 employment, all fees were subject to the Bankruptcy Court's approval and modification.

12 Finally, Appellant Kun appears to make a policy-based argument that the Bankruptcy
13 Judge's order would preclude attorneys from being compensated for the pre-petition work they are
14 required by law to do. However, as Judge Efremsky explained at the hearing, such an outcome is
15 not required by the bankruptcy rules. Rather, attorneys properly receive pre-filing compensation
16 that they draw down prior to filing – so as to avoid the potential of being a pre-petition creditor of
17 the estate – and which are fully disclosed so as to comply with disclosure laws. As Judge Efremsky
18 properly noted, "[Attorneys] provided services pre-petition. They drew down on the retainer, and
19 they advised the Court that they had provided service pre-petition. From the retainer, they paid
20 themselves for those services, and they said, and here's what we have left of that retainer going
21 forward. . . . You didn't do that." Docket No. 16-73 at 6. Appellant faced the denial and
22 disgorgement of his fees due to his own failure to comply with this process, not because of any
23 draconian rule against pre-petition attorney's fees. *See, e.g.*, *Maui*, 133 B.R. at 660 ("Denial of all
24 compensation is justified regardless of actual harm to the estate."); *In re Woodward*, 229 B.R. 468,
25 473-74 (Bankr. N.D. Okla. 1999) (attorney's disclosure violation was sufficient ground for
26 disgorgement regardless of reasonableness of fees or value of services rendered).

---

[11] Appellant expressly waives any procedural due process argument. *See* Reply to U.S. Trustee at 4.

United States District Court
For the Northern District of California

The Bankruptcy Court did not abuse its discretion in denying Appellant's requested fees and disgorging his retainer due to his disclosure violations.

### 4.     Alternative Grounds for Affirming

While the Bankruptcy Court was justified in denying fees based solely on Appellant's disclosure violations, his decision was also supported by the conclusion that Appellant was, in fact, not disinterested under § 327.  The court concluded that Appellant was a pre-petition creditor based on the fact that he had done work for debtor before the bankruptcy petition was filed for which he had not yet been paid.  Armed with this information, the Court determined that had it known these facts, it would never have approved Mr. Kun's employment.  Docket No. 16-73 at 3-4.  Based on the factual record, which included a contract for payment of a $5,000 retainer signed seven days *after* the petition was filed and a fee application indicating that Mr. Kun had done work for the debtor pre-petition, the Court's finding that Mr. Kun was not disinterested was not clearly erroneous.  *See, e.g.*, *Dick Cepek*, 339 B.R. at 740 ("[T]he inquiry into whether the professional holds interests adverse to the estate, is disinterested or otherwise is impaired by conflict of interest (actual or potential) is necessarily case- and fact-specific."); *In re AFI Holding, Inc.*, 530 F.3d 832, 852 (9th Cir. 2008) (comparing removal of trustee under § 324(a) to removal of attorney appointed under § 327, and finding that "[c]ause for removal of an appointed panel trustee under § 324(a) is not susceptible to sharp definition, but is determined on a case-by-case, totality-of-circumstances approach, subject to the bankruptcy court's broad discretion.").  The Bankruptcy Court was therefore within its discretion to deny Appellant's compensation pursuant to § 328(c).

Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion, nor did it mis-apply the law, in denying the application for fees and ordering disgorgement of the retainer.

///
///
///
///
///
///

### III. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's order denying Appellant all attorney's fees and expenses, and ordering disgorgement of his $5,000 retainer, is **AFFIRMED**.

IT IS SO ORDERED.

Dated: December 22, 2011

_____
EDWARD M. CHEN
United States District Judge